STATE of Utah, in the Interest of
Tamera SUMMERS and Tina
Summers, Respondent,

v.

Beatrice WULFFENSTEIN, Appellant.

No. 16300.

Supreme Court of Utah.

Aug. 19, 1980.

Don L. Bybee, Salt Lake City, for appellant.

Robert B. Hansen, Atty. Gen., and Sharon Peacock, Asst. Atty. Gen., Salt Lake City, for respondent.

WILKINS, Justice:

This matter is again before us following our remand to the Juvenile Court. In the prior case,[1] (hereafter *Wulffenstein I*), we held that Appellant Beatrice Wulffenstein, as paternal grandmother of the two minor girls in question, had standing to petition for custody of the children, and further that the Juvenile Court had jurisdiction of such a petition. In so holding we remanded to the Juvenile Court with instructions to

---

1. *State in Interest of Summers v. Wulffenstein,* Utah, 571 P.2d 1319 (1977). This matter was also before us earlier following the termination of the parental rights of the father of these two girls, Orin John Wulffenstein in *State in Interest of Summers Children v. Wulffenstein,* Utah, 560 P.2d 331 (1977), in which we affirmed the termination of parental rights.

grant appellant a hearing on the merits of her petition.

Following remand, the Juvenile Court held a hearing on June 7, 1978, at which the Court took evidence on appellant's fitness to be awarded custody. The hearing was then continued so that appellant could be given serious consideration by the State Division of Family Services (hereafter DFS) as a potential adoptive parent for the girls. In so ordering the Court stated:

So, at this point, again let me emphasize the way I construe the decision [*Wulffenstein I*], is first, the grandparents have dormant or inchoate rights,[2] rights that require some procedures in order to see that they have adequate consideration of their claim; that the agency who has custody and guardianship of the children should give serious consideration to that claim and since that has not been done, or at least that's my conclusion from what's been stated here, then that has to be done. At [sic] this hearing that commenced today on the fitness of the grandmother, is a part of the total hearing that would be necessary if her claim was denied by the agency after serious consideration was given to it, and therefore, I am going to hold this hearing in abeyance and recess it until such time as the agency has given serious consideration to her application, and if the claim is denied, then I'll set another hearing date to continue this hearing at which time I'll want to consider further evidence on what the agency did in it's [sic] serious consideration to make sure that was not arbitrary or capricious and that it really was a serious consideration, and also, to what is in the best interest and welfare of the child for future placement.

Following this hearing DFS conducted the usual adoption procedure with appellant. This process included a home study on appellant which involved a series of interviews of appellant by a DFS caseworker as well as an inspection of appellant's home. In addition, a psychological study was completed on appellant and the two little girls.

On August 17, 1978, a DFS adoption committee was convened which considered appellant's application to adopt the children. The committee came to the conclusion that appellant would not be an appropriate adoptive parent for these children.

Thereafter further hearing was had in the Juvenile Court on September 1, 1978. At that hearing some of the members of the adoption committee testified. These included the DFS social worker who did the home study, the adoption caseworker assigned to this case, and the State adoption specialist. Each testified as to what occurred in the adoption committee meeting including what was discussed and the reasons appellant was not considered to be an appropriate adoptive parent for the children. The psychologist who performed the psychological evaluation of the appellant and the children also testified and was cross-examined by appellant's counsel. Finally, appellant introduced two other psychological evaluations which had been performed on her, one done by a clinical psychologist and one by a psychiatrist.

The Juvenile Court made its findings of fact and conclusions of law and entered its decree on January 9, 1979. The Court found, *inter alia*, that DFS had given appellant's application "serious consideration". Based on the hearings of June 7, and September 1, as well as the study conducted by DFS, the Court concluded that it was in the best interest of the two children that they remain with their foster family, and, pursuant to the recommendation of DFS, that they be adopted by that family.

On appeal, appellant maintains that the procedure used by DFS in evaluating her application for adoption violated the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Utah Constitution, and further that the Juvenile Court lacks jurisdiction to decide questions of adoption. We address the latter issue first.

■ The Juvenile Court in its conclusions of law states:

---

**2.** See, *Wilson v. Family Services Division, Region Two*, Utah, 554 P.2d 227 (1976).

It is in the best interest and welfare of the children that they remain in their present foster home and be adopted by the present foster parents . . .

In so concluding the Juvenile Court did not purport to order the adoption. Indeed it could not because jurisdiction over adoptions rests exclusively in the District Court.[3]

This matter was before the Juvenile Court on appellant's petition for *custody*. It is clear from the decree entered by the Court that it was deciding the question of whether custody should be changed from the Division of Family Services, who had custody following termination of Orin John Wulffenstein's parental rights,[4] to appellant. The Court decided that custody should remain with DFS. Although in so deciding the Court stated that the children should remain "in their present home for adoption," the Court did not "order" adoption. As we held in *Wulffenstein I*:

> The Juvenile Court is the proper forum to seek modification of . . . a custody order . . .[5]

We move now to the due process issue. Appellant argues that since she was not given notice of the adoption committee meeting nor an opportunity to appear and be heard or cross-examined there, she was denied due process of law.

■ One of our most important constitutional guarantees is that no person may be deprived of life, liberty or property without due process of law. The first step in any

due process analysis is the identification of some liberty or property interest held by the allegedly aggrieved party. In *Wulffenstein I* this Court determined that, as grandmother of the two children, appellant has "some dormant or inchoate right or interest in the custody and welfare" of those children.[6] Although not characterized as such in *Wulffenstein I*, we view that interest as being a liberty interest.[7]

The next step in the analysis is to determine what process is due in each particular case before a protected interest can be impaired. The United States Supreme Court in *Mathews v. Eldridge*[8] set down three factors which must be considered in making this determination.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[9]

■ However, we feel it unnecessary to analyze in detail the minimum requirements of due process in this case because we are convinced that, while it is possible that the process afforded by the adoption committee may have been deficient,[10] that deficiency was cured by the proceedings in the Juvenile Court.[11]

---

3. Section 78–30–7, U.C.A., 1953, as amended.

4. The girls' mother died prior to the termination proceedings.

5. 571 P.2d at 1322.

6. Id., relying on *Wilson*, supra, n.2. For this reason we need not decide in this case whether persons applying to become adoptive parents *generally* have any constitutionally protected interest which must be afforded due process protection.

7. See *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

8. 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

9. Id. at 335, 96 S.Ct. at 903.

10. Because of the unique circumstances of the case before us, we need not decide whether the procedure employed by DFS or any adoption agency licensed by the State comports with due process. See, n.6, supra.

11. This is not to say that this Court believes *any* denial of due process by an administrative agency can be cured by subsequent judicial review. We agree with Professor Kenneth Culp Davis that relying on judicial review of administrative actions to cure due process defects in the administrative procedure "is often undesirable because of transfer of power from agency to court." 1 Administrative Law Treatise, § 7.10 (1958). Especially in the difficult

As was pointed out in the recitation of the facts of this case, *ante,* the Juvenile Court viewed its function to be to review the decision of the adoption committee (as probative of the petition for custody) at least if the committee denied appellant's application. At the September 1st hearing the entire DFS process was reviewed, substantially *de novo.* The social workers involved in the decision were examined by counsel and by the Court in order to ascertain the factors which were considered by the committee and the reasons for the committee's recommendation. Likewise the psychologist who completed the psychological evaluation of appellant and the children was subject to both direct and cross–examination. In addition, studies by another psychologist and a psychiatrist, which were arguably more favorable to appellant, were received into evidence. Following this hearing the Juvenile Court made detailed findings of fact which were amply supported by the evidence and came to conclusions of law based thereon. The Court showed, in our opinion, a high degree of sensitivity to the desire of the appellant to raise her grandchildren, but in deciding what would be in the best interest of the children involved–which was the Court's paramount duty[12]–decided that custody should remain with DFS pending adoption of the children.

This Court also is sensitive to the obviously genuine concern that appellant has for her grandchildren and sympathize with her strong desire that these children be raised by their blood relatives. However, the question of custody of these two children is one which is reserved in the first instance to the discretion of the Juvenile Court,[13] and we believe the record reflects an absence of any abuse of that discretion.[14]

As a final attack on the procedure of the adoption committee, appellant argues that the Standards and Policy for Approval of Adoptive Homes, 11C–105, 11C–140 and VACS 154, were not properly promulgated by DFS and hence could not constitutionally be applied in the administrative decision-making process. A review of the record shows that the evidence adduced by appellant does not support this contention.

Affirmed. No costs awarded.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

area of the placement of children for adoption the agency involved has superior expertise which should be respected by the courts, and which expertise courts will seldom, if ever, possess. It is therefore desirable that the agency itself be sensitive to the elementary notions for fair play embodied in the requirements of due process.

**12.** Section 78–3a–39(12).

**13.** See, e. g., *State in Interest of Tom,* Utah, 556 P.2d 213 (1976); *In re Cooper,* 17 Utah 2d 296, 410 P.2d 475 (1966); *State in Interest of F____, D____, and P____,* 14 Utah 2d 47, 376 P.2d 948 (1962); *State in Interest of K____ B____,* 7 Utah 2d 398, 326 P.2d 395 (1958).

**14.** See, e. g., *State in Interest of Tom,* supra; *In re Cooper,* supra; *State in Interest of F____, D____, and P____,* supra.