**STATE of Utah In the
Interest of W.D.,**

v.

**Christine DRAKE, Appellant.**

**No. 870578–CA.**

Court of Appeals of Utah.

March 8, 1989.

Bruce Plenk, Jeffrey Burkhardt, Salt Lake City, for appellant.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for respondent.

Before DAVIDSON, GARFF and ORME, JJ.

DAVIDSON, Judge:

On November 18, 1987, the juvenile court dismissed a pending state petition ruling that California was the more appropriate and convenient forum to determine custody of W.D. The natural parents of W.D. appeal the dismissal. We affirm.

## FACTS

Prior to W.D.'s birth, Christine Drake and William Mick, W.D.'s natural parents, lived together in San Francisco, California. Drake had previously given birth to another child, I.D., in 1984, but California authorities had taken her into protective custody. Drake and Mick sought the return of the child so the California authorities, over a period of several years, conducted evaluations of the parents, administered placement programs, and were involved in court hearings with the parents.

Following a hearing held on July 31, 1987, at which the California court recommended termination of parental rights in I.D., Drake left San Francisco and traveled to Salt Lake City. She was eight months pregnant with W.D. and came to Utah because she and Mick had decided that Utah law would allow them to retain custody of this child after its birth. Mick stayed behind in San Francisco. Drake arrived in Salt Lake City on August 1, 1987, bringing with her little money and few belongings. For most of that month, she lived at various places within the city, including the women's shelter.

On August 24, 1987, Drake delivered W.D. at Holy Cross Hospital. Two days later, Drake left the hospital, leaving W.D. behind. On August 31, after Drake had failed to visit W.D., a petition was filed with the juvenile court by the state. The petition alleged that W.D. was a dependent child and that California had jurisdiction over W.D., and was willing to adjudicate the "infant's legal status if the infant is returned to California." An order of temporary custody, placing custody of W.D. with the Utah Division of Family Services ("Family Services"), was issued by the court. A shelter hearing pursuant to Utah Code Ann. § 78–3a–30 (Supp.1988) was held the next day. However, the case worker was unable to find Drake to notify her of the hearing. As a result, custody was left with Family Services. The next day, September 2, Drake appeared, met with the case worker, and was informed about the shelter hearing. Drake refused to give her address and did not request another hearing.

On these same facts, a petition was filed in California on September 3, which also alleged that W.D. was a dependent child. A hearing was held in San Francisco on September 4. Notice was given to both Drake and Mick, and Mick was present with counsel. Following the hearing, a detention order for W.D. was issued. On September 5, California officials flew to Salt Lake City, picked up W.D. from Family Services personnel, and returned with him to California.

On September 12, Judge Matheson signed an *ex parte* order dismissing the case in Utah. Subsequently, Drake and Mick moved to set aside the dismissal. This motion was granted and a new hearing date set to consider the state's motion to dismiss. A hearing was held on the 5th and 18th of November 1987. During the hearing, each of the parents were represented by counsel and each side presented evidence and argument. At the conclusion, the court found that California was the more appropriate and convenient forum to determine custody, and granted the state's motion to dismiss.

The question before us is whether the Uniform Child Custody Jurisdiction Act ("UCCJA"), Utah Code Ann. § 78–45c–1 to –26 (1987), required the juvenile court to retain jurisdiction rather than defer to California as the more appropriate and convenient forum.

## DISCUSSION

The parents first argue that California did not have any basis for jurisdiction

over W.D. since Drake left before the child was born.

Like Utah, California has adopted the UCCJA. Cal. Civil Code § 5152 (West 1983). The pertinent provisions of these statutes are identical. They provide that a state court has jurisdiction to make or modify a child custody order if any of the following conditions are met:

   (a) This state ... is the home state of the child at the time of commencement of. the proceeding....

   (b) It is in the best interest of the child that a court of this state assume jurisdiction because ... the child and his parents, or the child and at least one contestant, have a significant connection with this state, and ... there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

   (c) The child is physically present in this state and ... the child has been abandoned or ... it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent....

Utah Code Ann. § 78–45c–3(1) (1987); Cal. Civil Code § 5152 (West 1983).

The statutes define "home state" as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned." Utah Code Ann. § 78–45c–2(5) (1987); Cal.Civil Code § 5151(5). Under this definition California fails to qualify as W.D.'s "home state." Utah may qualify as W.D.'s "home state" since he was born here, but problems arise in whether the child "lived from

birth" with Drake and whether the state is a "person acting as parent." However, we need not decide that issue. Unlike the PKPA[1] the Utah UCCJA does not give a preference to the "home state." The significant connection or substantial connection basis "comes into play either when the home state test cannot be met or *as an alternative to that test.*" 9 UCCJA (U.L.A.) § 3 comment, 144 (1988) (emphasis added). Even though a certain state may be the "home state," if "the child and his family have equal or stronger ties with another state" that other state also has jurisdiction. *Id.; see also Smith v. Superior Court of San Mateo County,* 68 Cal. App.3d 457, 137 Cal.Rptr. 348, 352 (1977). Therefore, the fact that Utah may technically have "home state" jurisdiction will not prevent California from also having jurisdiction under the "substantial connection" basis.

In the instant case, Drake and Mick had lived in California for several years. W.D. was conceived and carried nearly to term there. At the time the petition in California was filed, Mick was still living in San Francisco[2] and Drake had only left to find another state with more favorable custody laws. Under these circumstances Drake, Mick and W.D. all had substantial connections with California, thereby meeting the first requirement of the substantial connection test. Additionally, California authorities had information on the parents' mode of living, psychological makeup, marital relationship, parenting skills, and past interrelationship with· W.D.'s older sister. This was enough to meet the required need of substantial evidence on W.D.'s care, protection, training, and relationships to satisfy the second requirement. Although W.D. had never been in California, his physical presence "while desirable, [was] not a prerequisite for jurisdiction to determine his custody." Cal.Civil Code § 5152(3); *see*

---

**1.** Parental Kidnapping Prevention Act, 28 U.S. C.A. § 1738A (West Supp.1988). . The PKPA does not apply to child neglect and dependency proceedings, *State ex rel. Dep't of Human Sers. v. Avinger,* 104 N.M. 255, 720 P.2d 290, 292 (1986), and so is not important to the resolution of this case.

**2.** The facts and circumstances considered are those in existence when the petition was filed. *Rexford v. Rexford,* 631 P.2d 475, 478 (Alaska 1980).

*also* Utah Code Ann. § 78–45c–3(3) (1987). California had jurisdiction to issue the detention order even before W.D. was transported to that state.[3]

Alternatively, the parents argue that since a petition had been filed in Utah and a temporary custody order issued four days prior, the California court was not "exercising jurisdiction substantially in conformity with this act" when it issued its detention order.

Utah Code Ann. § 78–45c–6(1) (1987) limits the exercise of a court's jurisdiction under some circumstances:

> A court of this state shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

California is bound by a similar provision. Cal.Civil Code § 5155(1) (West 1983).

We reject the parents' interpretation of this section. The unilateral filing of a petition in one state does not prohibit the filing of a petition in another state which also has jurisdiction. *Peterson v. Peterson*, 464 A.2d 202, 205 (Me.1983). But more importantly, the purpose of section 78–45c–6(1) "is to encourage judicial restraint in exercising jurisdiction whenever another state appears to be in a better position to determine custody of a child." 9 UCCJA (U.L.A.) § 7, comment, 234 (1988). Ultimately, it is "less important *which* court exercises jurisdiction but that courts of several states involved act in partnership to bring about the best possible solution for a child's future." 9 UCCJA (U.L.A.) prefatory note, 118 (1988) (emphasis added). *See also Brokus v. Brokus*, 420 N.E.2d 1242, 1247 (Ind.App.1981); *Rexford v. Rexford*, 631 P.2d 475, 479 (Alaska 1980).

Given this purpose, we will not quibble over the point at which one court or the other acquired priority-in-time jurisdiction. Had the courts both attempted to exercise continuing jurisdiction over the matter, priority-in-time would have been important. *In re Guardianship of Donaldson*, 178 Cal.App.3d 477, 223 Cal.Rptr. 707, 714 (1986). However, a court which has priority-in-time jurisdiction can "yield jurisdiction" if another court is the more appropriate forum. Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand.L.Rev. 1207, 1231 (1969).

Finally, the parents argue that the court abused its discretion in determining that California was the more appropriate forum in which to litigate the custody of W.D.

Just which forum is the most appropriate is determined by the best interests of the child. Utah Code Ann. § 78–45c–7(3) (1987); Utah Code Ann. § 78–45c–3(1)(b) (1987); *Tuttle v. Henderson*, 628 P.2d 1275, 1276 (Utah 1981). *See also Trent v. Trent*, 735 P.2d 382, 383 (Utah 1987); *Kelly v. Draney*, 754 P.2d 92, 95 (Utah App. 1988). Several factors may be taken into account by the judge in determining best interests:

  (a) if another state is or recently was the child's home state;

  (b) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

  (c) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

  (d) if the parties have agreed on another forum which is no less appropriate; and

  (e) if the exercise of jurisdiction by a court of this state would contravene

---

**3.** Although we cannot condone the manner in which W.D. was taken to California before Judge Matheson declined jurisdiction, nor the misstatement of information contained in the California petition, we believe the subsequent hearings provided the parents adequate due process to protect their rights. *See In re Summers v. Wulffenstein*, 616 P.2d 608, 610 (Utah 1980).

any of the purposes stated in § 78–45c–1.

Utah Code Ann. § 78–45c–7(3).

Furthermore, "[a]lthough the child is the center of attention in a custody proceeding, the main inquiry is directed toward ... adults and toward making a prediction for the future concerning the superior ability of one of them to surround the child with the necessary security, affection, and all other needs of a growing child." Bodenheimer, 22 Vand.L. Rev. at 1223. In the instant case, substantial information concerning the parents' abilities and past history was in California. The mother had only recently come to Utah, but had lived for years in California. Finally, the exposed purpose in coming to Utah was to shop for jurisdiction.

Under these circumstances, we cannot say the judge abused his discretion in deciding that California had access to the greatest amount of relevant information, and so, in the best interests of the child, was the most appropriate and convenient forum to litigate the custody of W.D.

We affirm.

GARFF, J., concurs.

ORME, Judge (concurring and dissenting):

I concur in the substantive analysis set forth in the main opinion and agree with the conclusion that the Utah court did not abuse its "discretion in deciding that California had access to the greatest amount of relevant information, and so, in the best interests of the child, was the most appropriate and convenient forum to litigate the custody of W.D." I disagree only with the conclusion that *dismissal* of the Utah action was the appropriate means for implementing that decision.

I believe the Utah court erred in dismissing the petition filed with it rather than simply staying the proceeding as authorized in Utah Code Ann. § 78–45c–7(5) (1987).[1] Events were simply too unsettled to warrant outright dismissal. The Utah proceeding should have been kept alive pending further clarification of the situation: Would Drake remain in Utah and establish a legitimate residence here, or would she return to California? Would Mick stay on in California or join Drake in Utah? If Mick came to Utah, would California in fact retain jurisdiction over W.D. since W.D. was born in Utah and was still in Utah when the California petition was filed?[2]

Indeed, as it happened, Mick joined Drake in Utah, the two are enrolled in parenting classes, W.D. has been placed in a shelter home here, and Utah social workers are assisting with the transition to unification of the family—but all under the supervision of a California court. Had the action here been kept alive, the Utah court would have been in a position to monitor the situation and could have reactivated the Utah proceeding after it became apparent that Utah actually would have the greatest interest in W.D. and his family.

Conceding that, all things considered, California may have initially seemed the sensible forum to exercise jurisdiction, nonetheless, the Utah court should have merely stayed the proceeding before it rather than dismissing it outright. I would vacate the order of dismissal, remand with instructions to enter an order merely staying the Utah proceeding, and thereby per-

---

1. Section 78–45c–7(5) provides, with my emphasis:

> If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, *or it may stay the proceedings* upon condition that a custody proceeding be promptly commenced in another named state or *upon any other conditions which may be just and proper,* including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

2. The California petition falsely recited, under penalty of perjury, that W.D. was in emergency custody *in California* when the petition was filed there on September 4, 1987. However, Mick attended the hearing on the petition held that same day, with counsel. The actual facts fortunately emerged at the hearing and the California court made its decision, fully informed of the fact that W.D. was actually in Utah at the time.

mit Utah, on appropriate motion, to reassert jurisdiction over this Utah family.

