743 A.2d 1077 (1999)
In re D.T.
No. 99-052.
Supreme Court of Vermont.
October 29, 1999.
Motion for Reargument Denied November 22, 1999.
*1079 Michael Rose, St. Albans, for Appellant-Mother.
Charles Martin of Martin & Associates, Barre, for Appellant-Father.
William H. Sorrell, Attorney General, Montpelier, and Howard W. Stalnaker, Assistant Attorney General, Waterbury, for Appellee SRS.
Daniel Albert, Public Defender, St. Albans, for Appellee Juvenile.
Present AMESTOY, C.J., DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ.
SKOGLUND, J.
Mother appeals from a family court decision that held D.T. is a child in need of care and supervision (CHINS). She claims that the family court did not have jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA) over the merits of the CHINS proceeding. She further claims that the court's determination that D.T. was a child in need of care or supervision was unsupported by the court's findings and that the findings of the court have no support in the record. Father joins in mother's appeal. Although we conclude that the trial court failed to make adequate findings in deciding the jurisdictional issue, we nonetheless affirm because the record contains sufficient evidence to support a finding of jurisdiction. We affirm the determination of CHINS as well.
When D.T. was ten weeks old, he was taken into protective custody by the Department of Social and Rehabilitation Services (SRS) after he was hospitalized for bronchial distress. At the detention hearing, both mother and father agreed to temporary custody with SRS. See 33 V.S.A. § 5502(a)(12)(B). Prior to the merits hearing, parents filed a motion to dismiss for lack of jurisdiction on the basis that Vermont was not the child's home state under the UCCJA. See 15 V.S.A. § 1032(a)(1). The State did not argue that Vermont was the home state; rather, it posited that the court had jurisdiction under 15 V.S.A. § 1032(a)(2), i.e., that it would be in the best interest of the child for a court in Vermont to assume jurisdiction based on the child's and the parents' significant connection with this state and because substantial evidence concerning the child's present or future care and protection was available here. For purposes of deciding the jurisdictional issue, the parents agreed that the court could consider the facts alleged in the affidavits submitted in the case, but reserved the right to contest certain allegations of abuse and neglect. They further stipulated that they were in Vermont temporarily, but had not decided to leave.
The affidavits informed the court of the following. D.T. was born prematurely on April 9, 1998, in Worcester, Massachusetts, weighing only 2.2 pounds. D.T. remained hospitalized on a ventilator for two months prior to his being released to the parents on June 9, 1998. Mother, father and child left directly from the hospital to Vermont where they had arranged to live temporarily with father's ex-wife. Based on a referral from the Massachusetts hospital, services had been prearranged for the family. On the evening of the family's arrival in Vermont (the four hour trip took the family eight and one-half hours to complete), the child was seen by a home health nurse. Home health nurses came daily to check D.T.'s condition, to give instruction to the parents on the specialized care D.T. required, including the need for a respiratory monitor and to reinforce previous training. The home health nurses determined that the baby lost two ounces in his first twenty-four hours out of the hospital. A healthy-baby coordinator also had daily contact with the parents and the child. On June 16, 1998, D.T. was hospitalized due to respiratory problems, and was then under the care of a physician.
*1080 The affidavits noted that father's two children with his ex-wife had previously been taken into SRS custody in Vermont, and that his parental rights to these children were terminated by a Vermont court. No evidence was presented to the court concerning the parents' ties to Massachusetts, except for the undisputed fact that the child was hospitalized there for the first nine weeks of his life. One affidavit further alleged that mother has three other children that the State of New York took into custody in 1985.
On June 18, 1998, SRS took custody of D.T. and filed a CHINS petition. The court held a detention hearing the following day. The sole purpose of a detention hearing is to determine if continued detention is in the child's best interest and welfare. See 33 V.S.A. § 5515(a). The court continued detention, and the parents agreed to SRS's temporary custody of D.T. The child remained in the hospital. The parents were appointed counsel and filed a motion to dismiss for lack of jurisdiction in response to the State's CHINS petition, arguing only that Vermont was not D.T.'s "home state." On July 22, 1998, the court held a hearing, at which no evidence was taken. The court ruled from the bench based on the stipulated facts, concluding that it could exercise jurisdiction under either the significant-connections provision or the emergency provision of the UCCJA. See 15 V.S.A. § 1032(a)(2), (a)(3). SRS specifically requested that the court assert jurisdiction solely under the significant-connections provision of the UCCJA, but the court declined to do so. It found that the petition alleged an emergency situation and that there were sufficient contacts to exercise jurisdiction because: (1) the child was in the state and receiving medical treatment, (2) the parents were in the state, (3) the court was not informed of any proceeding pending in another state, (4) the court was not aware of any other state that would "have a better grasp" of the case (by which we assume the judge meant that no other state had more substantial evidence concerning the child's situation), and (5) no other state would be a more convenient forum.
A hearing on the merits of the CHINS petition was held on September 1 and November 10, 1998. On February 2, 1999, the court issued an order finding D.T. was CHINS. Following a motion on behalf of D.T. to correct judgment, the court amended the judgment to correct mother's name and to clarify that the findings were made by a preponderance of the evidence. Mother appeals. Father has joined mother's brief. D.T. has joined SRS's brief.
Mother argues that, under the UCCJA, the family court did not have jurisdiction to proceed to the merits of the CHINS proceeding. The UCCJA specifically includes neglect and dependency proceedings, such as CHINS proceedings, under the definition of "custody proceedings." See 15 V.S.A. § 1031(3). It provides four bases for jurisdiction to make a child custody determination. See In re A.L.H., 160 Vt. 410, 413, 630 A.2d 1288, 1290 (1993). Under the UCCJA, Vermont has jurisdiction if: (1) Vermont is the "home state" of the child, or (2) Vermont jurisdiction is in the child's best interest because the child and at least one contestant have significant connection to Vermont and there is substantial evidence in Vermont concerning the child's present or future care, or (3) the child is present in Vermont and needs emergency protection, or (4) no other state would have jurisdiction under (1), (2) or (3) or another state has declined jurisdiction because Vermont is a more appropriate forum to determine custody and it is in the best interest of the child to do so. See 15 V.S.A. § 1032(a).
SRS contends that Vermont may exercise jurisdiction under subsections (1), (2) or (3). Under subsection (1), the issue is whether Vermont was D.T.'s "home state" at the time of the commencement of the proceeding. See 15 V.S.A. § 1032(a)(1). "[I]n the case of a child less than six months old," the "home state" is "the state in which the child lived from *1081 birth" with "his parents, a parent, or a person acting as parent." 15 V.S.A. § 1031(5). Vermont is not D.T.'s "home state" because he did not live in Vermont "from birth." See In re Cifarelli, 158 Vt. 249, 253, 611 A.2d 394, 397 (1992) (Vermont is not "home state" of five-month-old child born in Bermuda, taken to New York for two weeks and then moved to Vermont because child did not live in Vermont "from birth" to commencement of proceeding); see also Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A(b)(4) (1989) (defining "home state"). We need not decide whether Massachusetts would qualify as D.T.'s home state because, unlike PKPA, Vermont's UCCJA does not give preference to the "home state."[1] Under Vermont's UCCJA, there is no preference for one jurisdictional ground over another. See Shute v. Shute, 158 Vt. 242, 247, 607 A.2d 890, 893 (1992).
Under subsection (2), Vermont has jurisdiction if it is in the best interest of the child for Vermont to assume jurisdiction because the child and at least one contestant have significant connections to Vermont and there is substantial evidence concerning the child's present and future care in Vermont. See 15 V.S.A. § 1032(a)(2). At the time the court asserted jurisdiction in this case, the only facts before it were those alleged in the affidavit filed with the petition and the parties' stipulation that the parents and D.T. were temporarily living in Vermont and had not decided to leave. The court found that Vermont had sufficient contacts to exercise jurisdiction under this subsection because the child was in Vermont and receiving medical treatment, the parents were in Vermont, and the court was not aware of any proceeding pending in another state or of any other state that would "have a better grasp" of the situation or be a more convenient forum. We conclude that these findings are insufficient to support jurisdiction under subsection (2).
The court did have evidence before it from which it could determine that the child and at least one contestant had significant connections with this state and that substantial evidence concerning the child's present or future care, protection, and personal relationships were available in Vermont. The child was ten weeks old when he was taken into custody. He had spent nine days in Vermont. It is difficult to conceive that a ten-week old child can have "significant connections" to a state. A court has to evaluate the situation presented, however, and in the case of a ten-week old infant, a court could find that, in unique circumstances, the requisite connection to a state has been met. Further, the court below had before it evidence that father had two children taken into custody in Vermont from a previous relationship, and that he and mother had intended to reside in Vermont, at least temporarily, when they brought the child into this state.
On the question of whether substantial evidence was available in Vermont, the affidavits showed that home health nurses had seen the child every day he was in the care of his parents while in Vermont, that a healthy-baby coordinator had seen the child and the parents every day since the family moved to Vermont, and, significantly, *1082 that Vermont was the only state wherein the parents had provided care for this child while not in a supervised hospital setting. Evidence concerning the child's "present care" was obviously fresh in Vermont. Finally, the affidavits indicated that the child's medical records, or at least the hospital discharge summary, had been transferred to Vermont as part of the Massachusetts agency's attempt to facilitate the parents' move to Vermont with D.T.
Despite this evidence in the record, the court did nothing more than to state the grounds required by the statute. It failed to make findings that would support jurisdiction. Further, the court apparently based its finding of jurisdiction, in part, on the absence of any proceeding in another state. The absence of a proceeding in another state, see 15 V.S.A. § 1035 (simultaneous proceedings in other states), and the determination of the appropriate forum, see 15 V.S.A. § 1036 (inconvenient or inappropriate forum), are not considered in the court's determination that it may exercise jurisdiction under one of the four subsections of § 1032(a).[2] If a court decides that it has jurisdiction under § 1032, it must then consider issues raised in those sections. Further, the UCCJA does not require one state's "substantial contacts" to be weighed against another state's "substantial contacts" for a state to have jurisdiction. See In re Adoption of Child by T.W.C., 270 N.J.Super. 225, 636 A.2d 1083, 1089 (App.Div.1994). Therefore, the court's findings that no other proceedings were pending in another state, that no other state would "have a better grasp," and that no other state would be a more convenient forum were extraneous.
We are therefore left with two statements by the court to support its jurisdictional determination: that the child was in the state and receiving medical treatment and that the parents were in the state. The child and one of the contestants' physical presence in the state is not by itself sufficient to confer jurisdiction on a court of this state to make a child custody determination, except under subdivisions (3) or (4) of subsection (a). See 15 V.S.A. § 1032(b). That the child was receiving medical treatment in Vermont provides a significant connection and a source of substantial evidence, but the court's mere notice of this fact cannot save the failure of the findings overall.
Although the court's findings are not adequate to support its conclusion regarding jurisdiction, the record here supported a finding of jurisdiction under 15 V.S.A. § 1032(a)(2) of the UCCJA. In light of the undisputed facts, summarized above, there is no sound or constructive reason to remand to the family court so it may make additional findings to support its conclusion. In these circumstances, a remand would amount to nothing more than an empty formality. Hence, we affirm. See Gochey v. Bombardier, Inc., 153 Vt. 607, 613, 572 A.2d 921, 925 (1990) (we "may affirm a correct judgment even though the grounds stated in support of it are erroneous"); see also Hanley v. United Steel Workers of America, 119 Vt. 187, 192, 122 A.2d 872, 875 (1956) ("We affirm the ruling on any legal ground shown by the record....").
Though we affirm the court's jurisdiction under § 1032(a)(2), we address the question raised by the State's claim that jurisdiction exists pursuant to § 1032(a)(3). Under subsection (3), Vermont has jurisdiction if "the child is physically present in this state" and "it is necessary in an emergency to protect the child." 15 V.S.A. *1083 § 1032(a)(3). The court found that it could exercise jurisdiction under this provision in addition to subsection (2). Mother does not dispute that the court had jurisdiction under this emergency provision at the commencement of the proceeding; rather, she contends that the jurisdiction conferred under subsection (3) allows the court to enter only a temporary custody order until the jurisdiction issue is resolved. She maintains that the court cannot proceed to the merits and disposition of the case under subsection (3) emergency jurisdiction. We agree.
This issue was addressed in In re A.L.H., in which we held that a Vermont court exercising temporary emergency jurisdiction under the UCCJA cannot proceed to make a permanent custody decision. See 160 Vt. at 413, 630 A.2d at 1291. In A.L.H., we recognized that subsection (3) allowed Vermont to enter only a temporary custody order until the proper forum was determined. See id. at 415-16, 630 A.2d at 1291-92. To allow a CHINS proceeding to continue on the basis of emergency jurisdiction alone would undermine the purposes of the UCCJA to assure that litigation concerning child custody takes place in the state with the most significant connections because emergency jurisdiction requires only the presence of the child and an emergency. See id. In sum, subsection (3) emergency jurisdiction allowed the court to enter a temporary custody order while the jurisdictional issue was being resolved, but cannot provide the jurisdictional basis for the merits decision here.
SRS contends that In re B.C., 169 Vt. 1, ___, 726 A.2d 45, 49-50 (1999), holds that Vermont may decide CHINS merits and initial disposition orders under subsection (3) emergency jurisdiction because neither is a permanent custody order. B.C. was an appeal from an order terminating parental rights in which the mother argued that the underlying merits and initial disposition orders were void for lack of jurisdiction and, therefore, could not be the basis for the termination proceeding. The mother had failed to appeal the merits and disposition orders and thus could prevail only if she satisfied V.R.C.P. 60(b)(4) to obtain relief from a final judgment. We held that the mother had not shown that either order was void for lack of subject matter jurisdiction because the family courts have exclusive jurisdiction over CHINS proceedings and the UCCJA imposes only territorial limits on the court's exercise of jurisdiction, which cannot be challenged under V.R.C.P. 60(b)(4). See id. at ___, 726 A.2d at 50.
We further noted that the court could have exercised jurisdiction under subsection (3), the emergency provision of the UCCJA, because the merits and initial disposition were not permanent custody orders. We now clarify that discussion. A decision from the merits hearing makes no award of custody, permanent or otherwise. It is an adjudication that a child is or is not in need of care or supervision pursuant to 33 V.S.A. § 5502(a)(12). Following an adjudication of CHINS, the court may continue any detention or temporary care theretofore ordered in the case, pending a disposition hearing. See 33 V.S.A. §§ 5514, 5515, 5526, 5527. A disposition hearing is a continuation of the juvenile proceeding begun with the merits hearing. In a disposition order, the court may permit the child to remain with his parents, guardian, or custodian, place the child under protective supervision, or transfer legal custody or guardianship over the child to certain named individuals and entities, including the commissioner of SRS. Thus, a disposition hearing results in an award of custody that is "permanent," at least until further order of the court. We hold that a court exercising emergency jurisdiction may not enter a final order on the merits and disposition in a CHINS proceeding.
Mother also claims that the record does not support the trial court's findings and, alternatively, that the facts fail to support the court's determination of *1084 CHINS. The issue before the family court at the merits stage of a CHINS proceeding is a determination of whether, at the time of the filing of the petition, the juvenile is a child in need of care and supervision. See 33 V.S.A. § 5526(a); In re R.L., 148 Vt. 223, 227, 531 A.2d 909, 911 (1987) (quoting In re L.S., 147 Vt. 36, 38, 509 A.2d 1017, 1019 (1986)). The State has the burden of proving, by a preponderance of the evidence, that the child is in need of care and supervision. See In re M.B., 158 Vt. 63, 70, 605 A.2d 515, 519 (1992). The trial court's findings will stand unless clearly erroneous, and its conclusions of law will be upheld if supported by the findings. See In re M.C.P., 153 Vt. 275, 295, 571 A.2d 627, 633 (1989).
In its decision, the trial court found that the premature infant, weighing 2.2 pounds at birth, lost weight he could not afford to lose during the lengthy trip from Massachusetts to Vermont; that mother did not feed the child on demand as instructed by the Massachusetts hospital at discharge; that she let the child cry for long periods of time, making no effort to pick him up or feed him; that she cursed at the baby; that she did not love or cuddle the child; that neither parent had the ability to recognize the special needs of their child nor to plan to meet those needs; that father did not give the required attention to his son and that the parents lack of planning had rendered them homeless. The court also found that mother had lost children to Massachusetts agencies because of past alcohol problems and because she was unable to protect her children from sexual abuse. The court further found that father suffered from bipolar disorder, seizures, and anger problems. Finally, the court found that the parents were blaming their homeless situation on both the pediatrician attending D.T. and SRS, which was involved in the family life of father's former wife. The court ultimately concluded that, "in June of 1998, D.T. was a child in need of care and supervision, as the parents were unable to meet his special needs."
Mother challenges only certain portions of the decision as lacking factual support. She disputes the evidence regarding the special needs of the child and the parents' feeding and attention to the child, arguing that the evidence showed that the child gained weight during his first week in Vermont and that any evidence that D.T. lost weight on the trip to Vermont was in dispute. The fact that D.T. gained weight during his first week in Vermont while under the watchful eye of home health nurses does not cast doubt on the court's findings concerning the care the parents provided the child. The fact that mother testified that the nurse lied in her testimony before the court about D.T. losing weight on the trip to Vermont is also not dispositive on that issue. As we have stated often, credibility of the witnesses is a matter for the trier of fact to judge. See In re Con-Elec Corp., 168 Vt. 576, 577, 716 A.2d 822, 824 (1998). "Due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses and the weight of the evidence." V.R.C.P. 52(a)(2). Mother further challenges these findings because of testimony provided at the November 10 hearing to the effect that D.T. no longer needed a monitor, was doing well at that time, and weighed twelve pounds four ounces. The fact that the child was doing well in November does not discredit the court's findings that, as of June 1998, D.T. had special needs his parents were unable to meet.
Further, mother herself testified that the chaotic living situation at father's former wife's house was taking its toll on the family. She was afraid she could not perform CPR on the child by herself, and that she was left alone to do so every night because the child's father and ex-wife both took their medication in the evening. She had a history of substance abuse and told service providers that the stressful living situation was placing her at risk of drinking again. The Vermont care providers *1085 noted little, if any, bonding between the parents and D.T. The court's findings on the issues of parents' attention paid to D.T. and their ability to attend to his nutritional and nurturing needs are not clearly erroneous and are supported in the record.
Mother also claims that the court's findings regarding the prior terminations of her other children and of father's "disabilities" were inadequate to support the CHINS determination because the court did not directly link them to D.T. We have held that "[w]hether treatment of one child is probative of neglect or abuse of a sibling must be determined on the basis of the facts of each case." In re D.P., 147 Vt. 26, 30, 510 A.2d 967, 970 (1986). We agree that, beyond finding the facts above, neither of which is disputed by mother or father, the court did not articulate what bearing, if any, such facts had on the CHINS decision. Because we find adequate support in the record and in the court's findings concerning the parents' abilities to care for D.T. and his special needs in June of 1998, the failure of the court to connect these facts to its decision concerning the parents' ability to care for D.T. does not require reversal for more adequate findings.
The credible evidence in this case amply supports the trial court's findings and determination that in June of 1998, D.T. was a child in need of care and supervision.
Affirmed.
DOOLEY, J., dissenting.
A major purpose of the Uniform Child Custody Jurisdiction Act (UCCJA) is to "assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and ... that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state." 1979, No. 136 (Adj.Sess.), § 1(3). By limiting jurisdiction to the state with the closest connection to the family, we prevent forum shopping and continuing controversy over jurisdiction, promote cooperation between the courts of the various states and ensure that custody is determined in the state that can best decide the case in the interest of the child. Today, the majority decides that a Vermont court may exercise jurisdiction over a family that has been in this state for nine days, and, in doing so, silently overrules our precedent and defeats the major purposes of the statute. I therefore dissent.
The UCCJA provides four bases for jurisdiction in child custody cases. See 15 V.S.A. § 1032(a)(1)-(4). I agree with the majority that Vermont is not D.T.'s home state. See ___ Vt. at ___, 743 A.2d at 1081; 15 V.S.A. § 1032(a)(1) (home-state jurisdiction). I agree with the majority that the family court cannot proceed to merits adjudication and disposition in a CHINS case under the emergency-jurisdiction provision because this provision allows only a temporary emergency order until the proper forum is determined. See ___ Vt. at ___, 743 A.2d at 1083; 15 V.S.A. § 1032(a)(3) (emergency jurisdiction). And I agree with the majority that the family court's findings are not adequate to support its conclusion that it may exercise significant-connections jurisdiction. See ___ Vt. at ___, 743 A.2d at 1082; 15 V.S.A. § 1032(a)(2) (significant-connections jurisdiction). Finally, the record reveals no basis for concluding that no other state has jurisdiction, nor that any other state has declined jurisdiction. See 15 V.S.A. § 1032(a)(4) (no-other-state jurisdiction).
I do not agree, however, that the current record allows us to find significant-connections jurisdiction on appeal. Because there is no ground for asserting jurisdiction consistent with the UCCJA in this case, I would vacate the merits decision, and remand to the family court to enter a temporary emergency-jurisdiction order until it develops a record necessary to determine the state with the closest ties *1086 to this family. See In re Adoption of Baby Girl B., 19 Kan.App.2d 283, 867 P.2d 1074, 1080 (1994) (remanding for further development of record to determine jurisdiction under UCCJA).
For purposes of determining jurisdiction, the parties stipulated to the facts alleged in the affidavit submitted with the CHINS petition as follows. D.T. was born prematurely on April 9, 1998, in Worcester, Massachusetts. D.T. remained at the hospital on a ventilator for two months and then was released to his parents on June 9, 1998. Mother, father and child left directly from the hospital to Vermont where they had arranged to live temporarily with father's ex-wife. On June 16, 1998, D.T. was hospitalized in Vermont due to continued respiratory problems. On June 18, 1998, the parents were homeless; SRS took custody of D.T. and filed a CHINS petition while D.T. was still in the hospital.
Mother has three other children who have been in the custody of the State of New York since 1985, when her husband was charged with molesting them. Father has been accused of sexually abusing a female child in New York. Father's parental rights to two children he had with his ex-wife have been terminated in Vermont. The Vermont healthy-baby coordinator strongly believed that father was considering leaving Vermont with mother and D.T. to join friends in Tennessee, New York or Massachusetts. Beyond the CHINS affidavit, the parties stipulated to the additional facts that the parents were in Vermont temporarily and had not decided to leave.
On June 19, 1998, the court held a detention hearing and temporary custody was granted to SRS, although D.T. remained in the hospital. As soon as counsel was appointed for the parents, they filed a motion to dismiss for lack of jurisdiction. On July 22, 1998, the court held a hearing, at which no evidence was taken. The court ruled from the bench based on the stipulated facts, concluding that it could exercise jurisdiction under either the significant-connections provision or the emergency provision of the UCCJA. See 15 V.S.A. § 1032(a)(2), (3). It found that the petition alleged an emergency and sufficient contacts to exercise jurisdiction because (1) the child was in the state receiving medical treatment, (2) the parents were in the state, (3) the court was not informed of any proceeding pending in another state, and (4) the court was not aware of any other state that would be a more convenient forum.
As the majority holds, the family court's findings do not support significant-connections jurisdiction in Vermont. See ___ Vt. at ___, 743 A.2d at 1082. Contrary to the majority, I would further hold that the facts to which the parties stipulated do not support significant-connections jurisdiction in Vermont. "The criteria supporting jurisdiction under the UCCJA must be present at the time of the initiation of the particular custody proceeding, and whatever occurs after that time is irrelevant to the initial inquiry into jurisdiction." Peloso v. Botkin, 144 Vt. 461, 464, 479 A.2d 156, 158 (1984) (citations omitted); accord Adoption of Zachariah K., 6 Cal.App.4th 1025, 8 Cal.Rptr.2d 423, 428 (1992) (subject matter jurisdiction under UCCJA is determined at time action is commenced); In re A.E.H., 161 Wis.2d 277, 468 N.W.2d 190, 200 (1991) (jurisdictional requirements under UCCJA must be met at commencement of proceeding). Thus, we are required to examine the facts as of June 18, 1998, when SRS took custody of D.T. and filed a CHINS petition. At that time, the family had been in Vermont nine days.
"Short-term presence in the state is not enough [to exercise significant-connections jurisdiction] even though there may be an intent to stay longer...." Uniform Child Custody Jurisdiction Act § 3 cmt., 9 U.L.A. 145 (1988); accord Brossoit v. Brossoit, 31 Cal.App.4th 361, 36 Cal. Rptr.2d 919, 927 (1995) (short-term connections in one state are insignificant when compared with connections established over years in another); Horlander v. Horlander, *1087 579 N.E.2d 91, 97 (Ind.Ct.App. 1991) (less than two months is short-term presence insufficient to confer significant-connections jurisdiction); Davidson v. Davidson, 169 Wis.2d 546, 485 N.W.2d 450, 456-57 (Ct.App.1992) (short-term presence of less than four months did not confer significant-connection jurisdiction); see also Peloso, 144 Vt. at 464-65, 479 A.2d at 158 (temporary visits do not establish significant connections). In this case, the record shows that the family had merely a short-term presence in Vermont and had not decided to leave. The temporary presence in Vermont does not support significant-connections jurisdiction in Vermont.
In construing the UCCJA, it is important to consider decisions in other states because the Act was intended to "make uniform the law of those states which enact it." 1979, No. 136 (Adj.Sess.), § 1(9). Section 1032(a)(2), the significant-connections provision of the UCCJA, states that a Vermont court has jurisdiction to decide child custody if:
(2) it is in the best interest of the child that a court of this state assume jurisdiction because
(A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and

(B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]
(Emphasis added.) Construing this provision consistently with decisions from other states, I cannot find sufficient evidence in the record that either prong is met.
In determining whether a child less than six months old and at least one contestant have a significant connection to the state, courts have considered (1) where the parents have lived during the last several years, (2) where the child was conceived and brought to term, (3) where the child was born, (4) where the child's siblings live, (5) where the grandparents live, and (6) the state that paid expenses associated with birth. See, e.g., State ex rel. R.P. v. Rosen, 966 S.W.2d 292, 301 (Mo.Ct.App. 1998) (considering where child was born, where parents lived for past considerable period of time, state that paid Medicaid expenses associated with birth); Mazur v. Mazur, 207 A.D.2d 61, 621 N.Y.S.2d 817, 820 (1994) (considering where parents lived for past several years, where parents are residing, where siblings and grandparents live); State ex rel. W.D. v. Drake, 770 P.2d 1011, 1013 (Utah Ct.App.1989) (considering where parents lived in past several years, where child was conceived and carried to term, and where child was born).
Most of this information is not in the record in this case. Nothing in the record indicates that mother had any connection with Vermont when SRS took custody of D.T., except that she was present here nine days. We do not know whether mother or father had ever been to Vermont before June 9, 1998, or had any other connections to Vermont, other than father's ex-wife's residence. This is not to say that this family does not have significant connections with Vermont, but simply that the record does not support such a conclusion. Moreover, the record is so sparse that it does not reveal significant connections to any other state. Cf. Davidson, 485 N.W.2d at 456 (significant contacts with Iowa include parents were born in Iowa, married in Iowa, have siblings and parents in Iowa and witnesses to testify to parenting skills are in Iowa; minimal contacts in Wisconsin were established in four-month stay).
In determining whether there is substantial evidence in the state concerning the present and future care of a child, courts have considered (1) where there is evidence of the marital relationship, the parents' mode of living and psychological make-up, (2) where there is evidence concerning the parents' ability to care for siblings and relationships with siblings, (3) where parental rights to previous children *1088 have been terminated and which proceeding was the most recent, and (4) where there are school or day-care records, medical records and evidence concerning other familial relationships. See Rosen, 966 S.W.2d at 301 (considering state that most recently took custody of siblings had evidence of father's sexual abuse of siblings, mother's failure to protect them, and parents' domestic abuse and substance abuse problems); State ex rel. Phelan v. Davis, 965 S.W.2d 886, 890 (Mo.Ct.App.1998) (day-care and medical records not in evidence cannot show significant connections); Drake, 770 P.2d at 1013 (considering information concerning parents' mode of living, psychological make-up, marital relationship, parenting skills and relationship with sibling).
Most of this information is not in the record in this case. We know that Massachusetts has the bulk of D.T.'s medical records, New York has custody of three of mother's children, and Vermont terminated father's parental rights to two children. Both Vermont and New York may have substantial evidence of the parents' ability to care for D.T., while Massachusetts has most of the information concerning the care D.T. needs. It would be helpful to know if either the Vermont or New York proceedings were recent. See Rosen, 966 S.W.2d at 301 (although mother had parental rights to three children terminated in Kansas, Missouri has since taken jurisdiction of mother's six other children and thus has more recent evidence of parenting skills). It would also be helpful to know where the parents lived during the last few years. The record lacks the facts necessary to decide whether there is substantial evidence concerning the present and future care of the child in Vermont or any other state.
The majority's analysis under § 1032(a)(2) is lacking in several respects. The first prong requires that the child and at least one contestant have significant connection with Vermont. The majority apparently concludes that D.T. has significant connections with Vermont, a conclusion with which I will not dispute, but fails to find a contestant with significant connections to Vermont. This is not surprising because the record does not support a finding that any contestant has significant connections to this state. Second, in examining the evidence in Vermont concerning D.T.'s present and future care, the majority focuses almost exclusively on the period after D.T.'s birth and largely ignores the evidence concerning this family prior to that date. Where the child is only a few weeks old, the parents' connections to various states are the critical inquiry, and the evidence concerning the parents prior to the birth may be highly probative of their ability to care for D.T. In this case in particular, this evidence is important because D.T. was in the parents' care for only seven days. Finally, the majority cites no authority to support its narrow significant-connections analysis, although the UCCJA is intended to "make uniform the law of those states which enact it." 1979, No. 136 (Adj.Sess.), § 1(9).
Rather than examining the brief period of D.T.'s life, and focusing on the seven days mother and father cared for D.T. in Vermont, a determination of significant-connections jurisdiction requires a longer view of the family ties to various states and broader view of evidence that is relevant to "the child's present or future care, protection, training, and personal relationships." 15 V.S.A. § 1032(a)(2). There are enough clues in this record to tell us that more information is necessary to determine the jurisdictional question; Vermont, New York and Massachusetts all have some ties to this family. Developing the record and giving full consideration to the family's connections to various states will result in exercising jurisdiction in the best interest of the child. See Uniform Child Custody Jurisdiction Act § 3 cmt., 9 U.L.A. at 145 (best interest of child "is served when the forum has optimum access to relevant evidence about the child and family") (emphasis added).
*1089 Until today, this Court has construed the UCCJA to promote its purposes as declared by the Vermont Legislature, following the comment of the Commissioners on Uniform State Laws. The UCCJA is intended to limit jurisdiction to the state with the closest connection or strongest ties to the family and the most evidence relevant to the family. See 1979, No. 136 (Adj.Sess.), § 1(3). The comment to the UCCJA further provides: "The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state." See Uniform Child Custody Jurisdiction Act § 3 cmt., 9 U.L.A. 145 (emphasis added). We adopted these tests in our case law. See, e.g., Peloso, 144 Vt. at 465, 479 A.2d at 158 (requiring "optimum access" to evidence and "maximum rather than minimum contact" with state to exercise significant-connections jurisdiction); see also In re Cifarelli, 158 Vt. 249, 253, 611 A.2d 394, 397 (1992) (if no home state exists, UCCJA limits jurisdiction to state with "strongest contacts with the child and the child's family"). Most other jurisdictions have also adopted these tests from the Commissioners' comment to the uniform law. See, e.g., Zachariah K., 8 Cal.Rptr.2d at 429 (jurisdiction in state with "closest connections"); L.G. v. People, 890 P.2d 647, 656 (Colo.1995) (closest connection and maximum amount of evidence).
More than any other section of the UCCJA, the significant-connections provision must be "interpreted in the spirit of the legislative purposes." Uniform Child Custody Jurisdiction Act § 3 cmt., 9 U.L.A. at 145. Although phrased in general terms to be flexible, "its purpose is to limit jurisdiction rather than to proliferate it." Id. Thus, we must "guard ... against too liberal an interpretation," always keeping in mind the purposes of the statute. Id. Requiring maximum contacts and optimum access to relevant evidence about the child and family ensures that determination of child custody occurs in the state with the closest connection. The majority's ruling defeats this legislative purpose by requiring that Vermont have only short-term, minimum contacts with the child and family to exercise jurisdiction.
The UCCJA also seeks "to prevent forum-shopping." In re A.L.H., 160 Vt. 410, 415, 630 A.2d 1288, 1291 (1993). For example, in Drake, mother left California and travelled to Utah when she was eight months pregnant because there was a proceeding to terminate her parental rights to another child pending in California. See Drake, 770 P.2d at 1012. The Court of Appeals of Utah properly declined jurisdiction over W.D. because California had the closest connections to the family and substantial evidence concerning the parents' ability to care for him. See id. at 1013-14. Under the majority's ruling today, the short-term presence in Utah would be enough for Utah to exercise jurisdiction, thus allowing precisely the forum-shopping the UCCJA was designed to prevent. There may not be forum-shopping in this case, but we have now opened the door for it in the future.
The UCCJA is also intended to promote cooperation with the courts of the other states to expand the exchange of information to the end that a custody decree is rendered in the state that can best decide the case in the interest of the child. See 1979, No. 136 (Adj.Sess.), § 1(2), (8). I recognize that applying the UCCJA in juvenile cases presents some additional concerns not present in divorce cases because a Vermont court exercising temporary emergency jurisdiction cannot rely on the out-of-state parent to commence proceedings in the other state and arrange for communications between the two courts. Cf. A.L.H., 160 Vt. at 412, 630 A.2d at 1289 (parents filed action in South Carolina court against social services, asking court to assume jurisdiction while Vermont court exercised temporary emergency jurisdiction). Thus, the court must rely on SRS in such cases to communicate with the social services agency in the other state to bring *1090 the matter before the court in that state. In the past, we have encouraged both SRS and the family courts to communicate with their counterparts in the other state whenever they are alerted that a jurisdictional issue is present. See In re B.C., 169 Vt. 1, ___, 726 A.2d 45, 52-53 (1999). If the Massachusetts and New York courts had been contacted, they might well have declined jurisdiction, and Vermont could have exercised jurisdiction under § 1032(a)(4) (other states have declined jurisdiction) consistently with the purposes of the Act. By affirming this decision, the majority approves the actions of SRS and the family court; thus discouraging communication in the future.
Additionally, under the majority's ruling, parents who briefly enter Vermont may be forced to move to Vermont or lose their children, although the family may have lived in another state all their lives. In B.C., mother's refusal to move from Massachusetts to Vermont to follow through with visitation and case plan services resulted in her termination of parental rights. See B.C., 169 Vt. at ___, 726 A.2d at 48. This may be the exact situation here; mother may be required to move to Vermont, a state with which she has no connection other than a temporary nine-day presence. The UCCJA was not intended to have such dire consequences for families.
Finally, I believe the majority opinion raises some broader concerns we should confront explicitly. I think this case vividly demonstrates why we have a UCCJA; it responds to years of child-custody-jurisdiction wars and decisions by courts with inadequate information, often in conflict with informed decisions by courts with the proper information. The merits decision here shows that, for whatever reason, we have in Vermont a child who desperately needs state intervention, protection and services. We pride ourselves in having a proactive family court. Many would say that jurisdiction is a quibble  let's act to protect this child!
One of the hardest choices that confronts us is between optimum justice for the litigants in the case before us and the development of legal rules to govern all cases. Courts do not assert jurisdiction over custody disputes for bad reasons  to deprive some other state of the opportunity to obtain jurisdiction. As in this case, they do so for very good reasons  to protect a child. But the long-term consequence of allowing this reason to control is that we abandon the rules designed to ensure that custody disputes are decided in the best forum.
This case also shows there are serious collateral consequences to a policy of easy long-term intervention. After only nine days in the state, this family has now become a very expensive addition to the public social services caseload of Vermont, and the family is forced to move to Vermont if the parents want reunification, a goal also of SRS. Instead, we can authorize emergency intervention and require a thoughtful process of comparison of which state has the best information and connection for the long-term decisions of this family, in the best interest of the child. Our failure to do so sends an unfortunate message that jurisdiction is, in the end, a quibble.
In summary, this Court should construe the significant-connections provision of the UCCJA consistent with the statutory purpose to limit jurisdiction to the state with the closest connections, a determination that cannot be made on the record before us. See Uniform Child Custody Jurisdiction Act § 1 cmt., 9 U.L.A. 124 (Act shall be construed to promote its purposes). By upholding the family court's decision in this case, the majority condones the trial court's failure to develop an adequate record, failure to communicate with the courts in Massachusetts and New York, and failure to determine the state with the closest ties to the family, thus, defeating the major purposes of the UCCJA. See 1979, No. 136 (Adj.Sess.), § 1(2), (3), (8) (declaring purposes of UCCJA to promote cooperation *1091 between courts and exchange of information to ensure state with closest ties to family decides child custody matter). Because I would reverse the family court's decision on jurisdiction, I would not reach the second issue concerning the merits decision raised by D.T.'s parents.
I am authorized to state that Justice JOHNSON joins in this dissent.
NOTES
[1] The parties have not argued that the PKPA, a federal act with jurisdictional criteria similar to the UCCJA, which requires states to give full faith and credit to child custody determinations made by other states, applies to this case. We note that this Court has not determined whether it applies to dependency and neglect proceedings, and, as we have previously observed, courts are divided on the issue. See In re A.L.H., 160 Vt. at 413 n. 2, 630 A.2d at 1290 n. 2 (collecting cases); Annotation, What Types of Proceedings or Determinations are Governed by the Uniform Child Custody Jurisdiction Act (UCCJA) or the Parental Kidnapping Prevention Act (PKPA), 78 A.L.R.4th 1028 (1990) (same). This case does not squarely present the issue because the PKPA applies only where a decree already exists or where custody proceedings have commenced in another state, which is not the instant case. See 28 U.S.C. § 1738A (1989); State ex rel. R.P. v. Rosen, 966 S.W.2d 292, 299 n. 2 (Mo.Ct.App.1998).
[2] The dissent misconstrues this holding. For purposes of determining jurisdiction, a court does not need to weigh its state's connections against those of another. It either has jurisdiction or it does not. The provisions of the UCCJA relevant to inconvenient forum and situations in which a custody proceeding is pending in another state are not factors in the determination of the discrete issue of a court's jurisdiction. This is particularly evident when the case does not set parent against parent but is brought by the State alleging child neglect and dependency.