630 A.2d 1288 (1993)
In re A.L.H., Juvenile.
No. 93-270.
Supreme Court of Vermont.
July 8, 1993.
*1289 Robert Appel, Defender Gen., and Henry Hinton, Appellate Atty., Montpelier, for appellant.
Kathleen B. London, Windsor County Deputy State's Atty., White River Junction, for State.
Kimberly B. Cheney of Cheney, Brock & Saudek, P.C., Montpelier, for appellees.
Before ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
MORSE, Justice.
Juvenile, an out-of-state resident attending school in Vermont, was placed in the temporary custody of the Department of Social and Rehabilitation Services (SRS) after disclosing that she had been sexually abused in past years by her father. She appeals from the Windham Family Court's orders relinquishing jurisdiction to juvenile's home state, South Carolina, and vacating its previous temporary custody order. We affirm the court's orders.
Juvenile is a sixteen-year-old girl who lived with her parents in South Carolina before coming to Vermont in January 1993 to attend boarding school. Approximately one month after she arrived in Vermont, she disclosed to school personnel that her father had sexually abused her from age seven to age fourteen, and that her mother had done nothing to protect her. After talking with juvenile, SRS asked the state's attorney to file a petition alleging that juvenile was in need of care and supervision (CHINS).
The family court issued an emergency order placing juvenile in the temporary custody of SRS. On April 15, in response to the parents' motion to dismiss for lack of jurisdiction, the court ruled that "the only basis upon which this court can exercise jurisdiction beyond issuing temporary protective orders is a declination by South Carolina to exercise jurisdiction." The court then continued the case for thirty days to allow South Carolina time to indicate its intention about exercising jurisdiction.
In South Carolina, meanwhile, the Charleston County Department of Social Services (DSS) suspended its investigation because it wanted the case litigated in Vermont. On May 6, 1993, the parents filed an action in South Carolina's family court against DSS, asking that court to assume jurisdiction of the case. DSS sought dismissal of the action, but on May 14, the court assumed jurisdiction, finding that South Carolina was the proper forum to hear the case. On May 26, the court issued an order placing juvenile in the protective custody of the State of South Carolina to be transported to South Carolina for appropriate placement.
That same day, in response to the South Carolina protective custody order, the Windham Family Court vacated its temporary custody order. Thereafter, juvenile went to New Jersey for a few days before returning to Vermont. Following a hearing under the Interstate Compact on Juveniles, 33 V.S.A. §§ 5701-5715, the Windham Family Court directed SRS to hold juvenile for a period not to exceed ninety days to allow the State of South Carolina to effect juvenile's return to that state.
Meanwhile, DSS continues to oppose litigation of the merits in South Carolina. DSS has indicated its intent to appeal the South Carolina family court's May 26 protective order, arguing that a protective services action must be brought by the local state agency, and that the family court had no jurisdiction to order the agency to take juvenile into custody and file a child protection action. Despite its continuing objection, DSS agreed to transport juvenile to South Carolina and place her in protective custody in view of the South Carolina family court's directive that would allow juvenile's *1290 parents to transport her to South Carolina.[1] DSS contends, and juvenile argues on appeal, that "[t]here is no protective services action pending in the Courts of South Carolina concerning [juvenile]."
We granted juvenile a stay of the Windham Family Court's order permitting South Carolina social services personnel to remove juvenile from SRS custody. On appeal, juvenile argues that custody should remain with SRS because the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. §§ 1031-1051, gives Vermont courts jurisdiction to determine the merits of the case. We conclude, however, that unless South Carolina declines jurisdiction, Vermont has no jurisdiction to make a permanent custody determination in this matter.
CHINS proceedings are subject to the UCCJA. See id. § 1031(3) ("custody proceeding" includes child neglect and dependency proceedings). Vermont has jurisdiction under the UCCJA if (1) Vermont is the "home state" of the child; (2) adjudication in Vermont is in the child's best interest because the child and a parent or contestant have substantial connections to the state or because there is substantial evidence available in the state concerning the child's present or future care; (3) the child is present in the state and needs emergency protection; or (4) no other state would have jurisdiction under standards similar to (1), (2) and (3), or another state has declined jurisdiction because it is more appropriate for this state to determine custody and it is in the best interest of the child for that to occur. 15 V.S.A. § 1032(a).
With respect to the first criterion, juvenile does not contend that Vermont has ever been her "home state." See 15 V.S.A. § 1032(a)(1). Secondly, we agree with the trial court that the child's connections to the state are insufficient to allow "best interest" jurisdiction under § 1032(a)(2).[2] Even if we were to assume that attending boarding school for a short period constituted a significant connection to the state, no other "contestant" has connections to the state. SRS is not "a person, including a parent, who claims a right to custody or visitation rights with respect to a child." See id. § 1031(1) (defining "contestant"); cf. In re L. W., 241 Neb. 84, 486 N.W.2d 486, 501 (1992) (construing identical definition of "contestant" under Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A(b)(2), court held that state acting in role of parens patriae does not fit within definition). Therefore, § 1032(a)(2)(A), which allows the court to assume jurisdiction in the child's best interest if the child and at least one other "contestant" have significant connections to state, is not applicable. Nor does the mere fact that juvenile reported the abuse in Vermont make "available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." 15 V.S.A. § 1032(a)(2)(B). Juvenile has been in Vermont only since January, and her reports of abuse pertain to acts committed in another state. See In re Pima County, 147 Ariz. 527, 532, 711 P.2d 1200, 1205 (Ct.App.1985) (children who alleged abuse had occurred in Arkansas and who had been in Arizona only short *1291 period could not show "availability of substantial evidence" in Arizona by referring to evaluations of abuse performed in Arizona), rev'd in part on other grounds, 147 Ariz. 584, 712 P.2d 431 (1986).
Juvenile also asserts jurisdiction under the UCCJA's emergency provision. See 15 V.S.A. § 1032(a)(3)(B) (child is physically in state and emergency protection is required because juvenile "has been subjected to or threatened with mistreatment or abuse or is otherwise neglected"). She argues that, despite our prior holding that this section "only confers jurisdiction for a court to enter temporary protective custody orders," In re B.J.C., 149 Vt. 196, 198, 540 A.2d 1047, 1049 (1988), jurisdiction exists in this case to make a permanent custody determination because this is not a custody dispute between parents and there is neither a prior order nor a valid proceeding in South Carolina. We are not persuaded by this argument.
Virtually all courts that have addressed the issue have concluded that jurisdiction under the UCCJA's emergency provision, particularly in cases such as this where the abuse is reported to have occurred in another state, does not authorize courts to make permanent custody determinations. See, e.g., In re Pima County, 147 Ariz. at 527-28, 711 P.2d at 1206-07 (in dependency proceedings, as well as parental custody proceedings, exercise of emergency jurisdiction is limited to temporary orders); Nelson v. Nelson, 433 So.2d 1015, 1017 (Fla. Dist.Ct.App.1983) (emergency jurisdiction sufficient to effect, a change of permanent custody is limited to instances where child is in custody of alleged abuser in state where proceeding is brought); Benda v. Benda, 236 N.J.Super. 365, 565 A.2d 1121, 1124-25 (App.Div.1989) (emergency jurisdiction permitted family court to take only interim protective measures concerning children); Curtis v. Curtis, 789 P.2d 717, 723 (Utah App.Ct.1990) (protective order based on emergency jurisdiction should continue only long enough to determine proper forum).
While recognizing the differing roles of courts in CHINS cases and parental custody disputes, we are not convinced that the distinctions make it necessary, or even advisable, to allow permanent custody orders solely because of a temporary emergency situation. To do so would undermine the purposes of the UCCJA, which seeks to avoid jurisdictional competition and conflict, to prevent forum-shopping, and to assure that litigation concerning child custody takes place in the state where the child has the most significant connections. See 1979, No. 136 (Adj.Sess.), § 1 (stating purposes of UCCJA); Boisvert v. Boisvert, 143 Vt. 445, 447, 466 A.2d 1184, 1185 (1983) (UCCJA seeks to ensure that custody matters are litigated in state where child and family have closest connections); In re Pima County, 147 Ariz. at 533-34, 711 P.2d at 1206-07 (allowing permanent custody orders in dependency proceedings arising out of emergency circumstances would have unintended effect of excluding such proceedings from purview of UCCJA).
Regardless of who brings the petition, the primary goal is to have the merits of the matter litigated in the most appropriate forum, which in the vast majority of cases is the child's home state. Juvenile asks this Court to consider her best interests rather than her connections to her home state or comity between jurisdictions. As a general rule, comity promotes the child's welfare, and neither the child's welfare nor comity are advanced by allowing the UCCJA's emergency provision to subsume the purposes of the Act. Nelson v. Nelson, 433 So.2d at 1018-19. In this particular instance, a South Carolina court has issued orders assuming jurisdiction and placing juvenile in the protective custody of DSS. Following a hearing, the court found that it would be in the child's best interest to be returned to and placed in protective custody in South Carolina, which is the appropriate forum to adjudicate the merits of the case.
We are aware that DSS is challenging those orders on the ground that only it can bring a protective services action in the State of South Carolina, but that is an issue for the courts of South Carolina to resolve. We will not second-guess the South Carolina *1292 family court's assumption of jurisdiction. Section 1032(a)(4) does not apply because South Carolina courts have jurisdiction under § 1032(a)(1) and that state has not declined jurisdiction.
Juvenile has expressed her fear that the courts of South Carolina will not be willing to protect her from her parents, who, she alleges, are trying to commit her to a mental institution. We read the Windham Family Court's orders, as they now stand, to place juvenile in SRS's hands for up to ninety days and to permit only South Carolina social services personnel, upon proper requisition under the Interstate Compact on Juveniles, to transport juvenile back to South Carolina. We agree with the family court that this is the proper course of action under the circumstances. The merits of this case should be decided in South Carolina. The record indicates that DSS was willing, subject to its appeal of the underlying orders, to transport juvenile back to South Carolina and place her in protective custody. If DSS refuses to protect the juvenile or the South Carolina family court's orders are stayed pending an appeal of those orders, or the Windham Family Court otherwise finds that returning juvenile to South Carolina would place her in danger, it may issue further temporary orders to assure her protection. See In re Pima County, 147 Ariz. at 534, 711 P.2d at 1207.
This Court's stay is lifted. The April 15, May 20, May 26 and June 3, 1993 orders of the Windham Family Court regarding A.L.H. are affirmed.
NOTES
[1] Although the South Carolina family court's oral directive permitted the parents to pick up their daughter in Vermont, the court's written order permitted only her mother to pick her up.
[2] The Parental Kidnapping Prevention Act, which preempts conflicting UCCJA provisions, permits "best interest" jurisdiction only if no other state has "home state" jurisdiction. 28 U.S.C. § 1738A(c)(2)(B); see Shute v. Shute, 158 Vt. 242, 247, 607 A.2d 890, 893 (1992) (in custody case, best interest of child is no longer controlling if child has home state under PKPA). The courts are divided on whether the PKPA applies to neglect and dependency proceedings. Compare In re Pima County, 147 Ariz. 527, 711 P.2d 1200, 1206 (Ct.App.1985) (PKPA applies to dependency proceeding), rev'd in part on other grounds, 147 Ariz. 584, 712 P.2d 431 (1986), and Kasper v. Kasper, 792 P.2d 118, 129-30 (Utah Ct.App.1990) (same), with In re L. W., 241 Neb. 84, 486 N.W.2d 486, 500-01 (1992) (PKPA does not apply to neglect and dependency cases), and New Mexico v. Avinger, 104 N.M. 255, 257, 720 P.2d 290, 292 (1986) (same); cf. In re Cifarelli, 158 Vt. 249, 253, 611 A.2d 394, 396-97 (1992) (Shute holding accepted in guardianship proceeding). Because we conclude that the "best interest" jurisdiction under 15 V.S.A. § 1032(a)(2) has not been met, we need not address the issue of whether the PKPA is applicable here.