## Tressa Rocissono v. Michael Spykes

[749 A.2d 592]

No. 99-114

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed January 28, 2000

*Harold B. Stevens* and *Heather S. Bowman* of *Stevens Law Office*, Stowe, for Plaintiff-Appellant.

*Sharon Green* of *Williams and Green, P.C.*, Morrisville, for Defendant-Appellee.

**Dooley, J.** Plaintiff Tressa Rocissono (mother) appeals the family court's refusal to assume jurisdiction over the parties' custody dispute concerning their two children. We vacate the court's decision and remand the matter for further proceedings.

Mother and defendant Michael Spykes (father) were married in 1985 and divorced in 1994. Their North Carolina divorce decree gave mother primary custody of the parties' two children, a girl born in November 1985 and a boy born in January 1991. Father was awarded liberal visitation rights. Following the parties' divorce, mother married Dean Rocissono. Mother and her family moved to Vermont from North Carolina on September 5, 1997, the same date father filed a petition in North Carolina asking the court to modify visitation or transfer custody to him. Apparently, the petition was either withdrawn or settled by stipulation after mother agreed to allow the children to spend their summers with father, who moved to Arizona at some point before the instant dispute arose.

In June 1998, the parties' two children traveled to Arizona for a scheduled summer visit with father. On August 7, 1998, two days before the children were to return to Vermont, father filed with the Arizona superior court a petition seeking emergency modification of visitation or custody. In the petition, father stated that he had spoken to mother by telephone on August 6 and August 7, and in the conversations mother admitted that her husband had disciplined the children inappropriately, and that she was powerless to stop the physical and verbal abuse. On the same day that father filed the petition, mother left her husband and sought refuge in a shelter for battered women. On August 11, 1998, the Arizona court assumed emergency jurisdiction over the matter and granted father temporary custody of the children. The court explicitly stated that it had not determined whether to exercise its jurisdiction other than on an emergency, temporary basis.

On October 8, 1998, mother filed a petition in Vermont requesting that the family court assume jurisdiction over the parties' custody dispute and enforce the North Carolina divorce decree granting her custody of the children. Father appeared by counsel after having been personally served in Arizona. Six days later, by motion-reaction form,

the family court granted mother's request that it assume jurisdiction over the custody dispute. On December 4, 1998, however, the Arizona superior court determined that the safety of the children required it to exercise jurisdiction over the matter. Noting that a telephonic conference had been held with Judge Ben Joseph of the Vermont family court, the Arizona superior court stated that it was in the children's best interest that they continue to reside in Arizona because mother had reconciled with her husband, who posed a danger to the children. The Arizona court further concluded that Arizona was the most convenient forum to decide the custody dispute because the children had resided there since August 1998 and their therapist and counselors possessed the most relevant information regarding the alleged abuse. Four days later, on December 8, 1998, the Vermont family court issued an entry order scheduling a hearing to reconsider mother's request for the court to assume jurisdiction over the parties' custody dispute.

On February 19, 1999, following a December 15, 1998 hearing, the Vermont family court declined to exercise jurisdiction over the matter. Noting that it had not conferred with the Arizona court before initially deciding to assume jurisdiction, the family court stated that because the Arizona court had already lawfully assumed jurisdiction, the "real" question was whether custody proceedings should take place only in Arizona or in both Arizona and Vermont.[1] The family court concluded that Vermont would be an inappropriate and inconvenient forum because mother had reconciled with her husband, who continued to pose a threat to the children, and the children's best interest dictated that they reside in a nonabusive household while the case was being litigated. The court also noted that the children's therapist and counselors were in Arizona, and that the children had been in Arizona for as long as they had previously been in Vermont. Finally, the court stated that the Parental Kidnapping Prevention Act (PKPA) precluded Vermont from assuming jurisdiction because the Arizona court had already exercised jurisdiction over the matter by modifying the North Carolina divorce decree. See 28 U.S.C. § 1738A(f) (court may modify custody determination made by court of another state if it has jurisdiction to make custody determination and

---

[1] The family court characterized the question before it as "whether a Vermont court has jurisdiction to modify a child custody determination made by another State (North Carolina) when there is already a modification proceeding pending in another State (Arizona)." This characterization was incorrect because, in fact, the court had no request for modification before it.

court of other state either no longer has jurisdiction or has declined to exercise jurisdiction); 28 U.S.C. § 1738A(g) (court shall not exercise jurisdiction over custody matter during pendency of proceeding in which court of another state is exercising jurisdiction consistently with PKPA). Mother appeals the February 19 decision, arguing that because Vermont is the children's home state, and the Arizona superior court improperly exercised jurisdiction to make a permanent custody determination, the family court should have assumed jurisdiction over the matter.

As the family court pointed out, both Vermont and Arizona have adopted the Uniform Child Custody Jurisdiction Act (UCCJA). See 15 V.S.A. §§ 1031-1051; Ariz. Rev. Stat. Ann. §§ 25-431 to 25-454. In addition, both Vermont and Arizona have recognized the primacy of the PKPA, which represents the federal government's attempt to create some uniformity among the states in their exercise of jurisdiction over interstate custody disputes under the UCCJA. Although the PKPA, unlike the UCCJA, does not purport to govern whether a state has jurisdiction to issue an initial custody order, it does govern the enforceability of one state's custody order in another state, as well as the other state's power to modify that order; thus, for all practical purposes, an initial custody order must comply with the PKPA in all respects, including its preference for home-state jurisdiction. See *Columb v. Columb*, 161 Vt. 103, 108-09, 110, 633 A.2d 689, 692 (1993); *J.D.S. v. Franks*, 893 P.2d 732, 739 (Ariz. 1995) (although PKPA does not govern exercise of initial jurisdiction over custody matters, courts must comply with PKPA if they wish other states to give full faith and credit to their custody degrees).

Because the family court's February 19 decision to decline jurisdiction was based in part on the Arizona superior court's December 4, 1998 decision to assume jurisdiction over the parties' custody dispute, we first consider whether the Arizona court's decision is entitled to full faith and credit. A state court's custody determination is consistent with the PKPA and thus entitled to full faith and credit if (1) the court has jurisdiction under the law of that state, and (2) one of the following conditions is met: (A) that state is, or was under certain circumstances not relevant here, the children's home state at the time of commencement of the proceeding in that state; (B) no other state would have jurisdiction, and it is in the children's best interest for that court to assume jurisdiction because the children have significant connections to that state, and substantial evidence concerning the children's present or future care is available there; (C) the children

are physically present in the state and the court must assume emergency jurisdiction to protect them; (D) no other state would have jurisdiction, or another state declined to exercise jurisdiction on the ground that the state whose jurisdiction is at issue is the more appropriate forum to determine custody of the children, and it is in the children's best interests for a court in that state to assume jurisdiction; or (E) the court made a custody decision consistent with the PKPA, the court continues to have jurisdiction under the laws of that state, and that state remains the residence of the children or any contestant. See 28 U.S.C. § 1738A(c).

Here, mother is not challenging the Arizona superior court's assumption of emergency jurisdiction on August 11, 1998. See 15 V.S.A. § 1032(a)(3) (court has jurisdiction to make child custody determination if child is physically present in state and it is necessary for court to assume emergency jurisdiction to protect child who is subject to or threatened with abuse or neglect); Ariz. Rev. Stat. Ann. § 25-433(A)(3) (same); 28 U.S.C. § 1738A(c)(2)(C) (child custody determination is consistent with PKPA if court has jurisdiction under law of that state and emergency requires court to assume jurisdiction to protect child physically present in state). Rather, she argues that the court's assertion of emergency jurisdiction did not entitle it to retain jurisdiction and make a permanent custody determination. Mother contends that because the children resided in Vermont with their custodial parent for more than six months before the instant dispute arose, Vermont was their home state, see 15 V.S.A. § 1031(5) ("home state" is state in which child lived with parent for at least six consecutive months immediately preceding commencement of proceeding), and thus the Vermont family court was required to exercise jurisdiction over the parties' custody dispute.

Because the Arizona superior court initially had emergency jurisdiction under the law of that state, see 28 U.S.C. § 1738A(c)(1), we need determine only whether one of the conditions listed in § 1738A(c)(2)(A)-(E) supports the Arizona court's assumption of jurisdiction to make a permanent custody award. In reviewing these conditions, we recognize that the PKPA's jurisdictional criteria, which for the most part mirror the criteria contained in the UCCJA, must generally be considered with respect to circumstances existing at the time the custody proceeding was initiated — in this case, August 7, 1998. Cf. *Peloso v. Botkin*, 144 Vt. 461, 464, 479 A.2d 156, 158 (1984) (criteria supporting jurisdiction under UCCJA must be present at time of initiation of particular custody proceeding; whatever occurs

after that time is irrelevant to initial inquiry into jurisdiction); *In re Pima County*, 711 P.2d 1200, 1205 (Ariz. Ct. App. 1985) (critical date for determining home-state jurisdiction under UCCJA and PKPA is date custody proceedings were commenced), *vacated in part on other grounds*, 712 P.2d 431 (Ariz. 1986).

It is undisputed that as of August 7, 1998 Arizona was not and had never been the children's home state. See § 1738A(c)(2)(A). Nor could the Arizona court have assumed jurisdiction under § 1738A(c)(2)(B), since Vermont would have had jurisdiction as the children's home state.

■ As for § 1738A(c)(2)(C), although mother has not challenged the Arizona court's exercise of emergency jurisdiction, the assumption of emergency jurisdiction does not allow a court to make a permanent custody determination unless no other state has jurisdiction or the state that does have jurisdiction declined to exercise it. See *In re A.L.H.*, 160 Vt. 410, 413, 630 A.2d 1288, 1290 (1993) (family court's exercise of jurisdiction under the UCCJA's emergency provision did not entitle court to make permanent custody determination in that matter unless home state had declined jurisdiction); see also *In re D.T.*, 170 Vt. 148, 155, 743 A.2d 1077, 1083 (1999) (reaffirming holding in *A.L.H.* that Vermont court exercising temporary emergency jurisdiction under UCCJA cannot enter permanent custody order until proper forum is determined). As we noted in *A.L.H.*, virtually all courts that have addressed the issue, including Arizona, "have concluded that jurisdiction under the UCCJA's emergency provision, particularly in cases . . . where the abuse is reported to have occurred in another state, does not authorize courts to make permanent custody determinations." 160 Vt. at 415, 630 A.2d at 1291 (citing *Pima County*, 711 P.2d at 1206-07); see *Perez v. Tanner*, 965 S.W.2d 90, 94 (Ark. 1998) (emergency jurisdiction under UCCJA and PKPA permits courts to issue only temporary orders pending determination of proper forum). Indeed, Arizona courts have recognized that in cases in which a court grants temporary emergency custody to the resident parent, "it should not ordinarily resolve the merits of the controversy as to permanent custody." *Iacouzze v. Iacouzze*, 672 P.2d 949, 952 (Ariz. Ct. App. 1983); accord *Pima County*, 711 P.2d at 1205.

■ Thus, the Arizona court's December 4 assumption of jurisdiction to make a permanent custody determination was not consistent with the PKPA by virtue of § 1738A(c)(2)(C). Further, because the Arizona court's initial assumption of emergency jurisdiction did not,

in and of itself, confer jurisdiction to make a permanent custody determination, the court did not have continuing jurisdiction to issue such an order under § 1738A(c)(2)(E). Nor could the Arizona court modify the North Carolina custody decree under § 1738A(f), which permits a court to modify a custody determination made by a court of another state if the forum court has jurisdiction to issue such a determination and the court of the other state no longer has jurisdiction or has declined jurisdiction. Unless the child's home state has declined jurisdiction, § 1738A(f) of the PKPA does not permit a court that has assumed emergency jurisdiction over a custody matter to modify a custody decree of a third state that no longer has jurisdiction. See *In re Van Kooten*, 487 S.E.2d 160, 164 (N.C. Ct. App. 1997).

This brings us to the last alternative ground for jurisdiction. Under § 1738A(c)(2)(D), the Arizona superior court's December 4, 1998 decision to assume permanent jurisdiction over the parties' custody dispute would have been consistent with the PKPA and thus entitled to full faith and credit if (1) the children's home state, Vermont, had declined to exercise jurisdiction on the ground that Arizona was the more appropriate forum to determine custody of the children, and (2) it was in the children's best interest for Arizona to assume jurisdiction. As of December 4, 1998, however, Vermont had not declined to exercise jurisdiction over the parties' custody dispute. To the contrary, on October 14, 1998, the Vermont family court granted mother's request that it assume jurisdiction over the matter. Even assuming that the October 14 order was invalid because of the family court's failure to communicate with the Arizona court, see 15 V.S.A. § 1035 (before exercising jurisdiction, court shall make inquiry as to custody proceeding in other state and communicate with court in that state to assure matter is litigated in appropriate forum), the family court had not declined to assert its jurisdiction as of December 4.

Evidently, sometime between October 14 and December 4, the two courts held a telephonic conference. But nothing in the record indicates the substance of that conference, which the Arizona court referred to in its December 4 decision.[2] On December 8, the family

---

[2] In its February 19, 1999 decision, the family court implied, but did not state, that the Vermont and Arizona courts participated in a telephonic conference. The implication arises from the family court's statement that it vacated its October 14 order assuming jurisdiction because it had not consulted with the Arizona court before entering the order. That statement implies that the deficiency was corrected before the February 19 decision was rendered.

court informed the parties that a hearing would be held to reconsider its decision to assume jurisdiction over their custody dispute. We must assume that no decision to decline jurisdiction had been made before the December 15, 1998 hearing that was scheduled for the court to consider that very question. Indeed, the family court's decision not to exercise jurisdiction was made on February 19, 1999, more than two months after the Arizona superior court assumed permanent jurisdiction over the matter.

 Given these inescapable facts, we conclude that the Arizona superior court's December 4 decision to assert permanent jurisdiction over the parties' custody dispute was not consistent with the PKPA and thus not entitled to full faith and credit. Cf. *Pima County*, 711 P.2d at 1207 (juvenile court acted in contravention of UCCJA and PKPA by exercising its emergency jurisdiction without first communicating with home state to determine appropriate forum *and* without home state having declined jurisdiction). Therefore, the family court was not precluded from assuming jurisdiction in this case by § 1738A(g) of the PKPA, which prohibits a state from asserting jurisdiction over a custody dispute that is pending in another state in which the court is exercising jurisdiction consistently with the PKPA.

Our conclusion that the family court was not required to decline jurisdiction because of the premature action of the Arizona court does not suggest, however, that mother must prevail in this appeal. The family court had discretion, within the bounds of the law, to decline jurisdiction. Assuming that the family court's February 19 decision to decline jurisdiction was proper, the Arizona's court's premature assumption of jurisdiction would be rendered harmless.

The question remains, therefore, whether the family court abused its discretion in declining to exercise jurisdiction. The family court declined jurisdiction for three reasons: (1) the Arizona court had lawfully assumed permanent jurisdiction over the parties' custody dispute on December 4, 1998, and thus could act on father's petition to modify the North Carolina custody order; (2) mother's husband, with whom mother had reconciled, continued to pose a danger to the children, who needed to reside in a nonabusive household while the case was litigated; and (3) the children's therapist and counselors were in Arizona and could provide information concerning the alleged past abuse and the children's future needs.

We have already held that the first reason was erroneous because on December 4, 1998 the Arizona court did not properly assume jurisdiction to issue a permanent custody determination concerning

the parties' dispute. The second reason is also erroneous insofar as it appears to address the merits of the controversy rather than the jurisdictional question. Either the Arizona or the Vermont court could have issued temporary orders assuring the children's safety, regardless of which forum was deemed appropriate for adjudicating the parties' custody dispute. The family court, for example, could have issued an order allowing father to keep the children with him in Arizona pending a final decision on the motion to modify. See, e.g., *A.L.H.*, 160 Vt. at 416-17, 630 A.2d at 1292 (after assuming emergency jurisdiction under UCCJA, if family court finds that returning juvenile to home state would place her in danger, "it may issue further *temporary* orders to assure her protection"); see also *Shook v. Shook*, 651 So. 2d 6, 9 (Ala. Civ. App. 1994) (trial court should have continued its emergency jurisdiction "only until the proper forum had been determined"; court erred in permanently modifying Nevada custody determination based solely on emergency provision of PKPA); *Iacouzze*, 672 P.2d at 952 (rather than award permanent custody to mother under UCCJA's emergency jurisdiction, trial court should have awarded mother temporary custody and stayed further proceedings upon condition that custody proceeding would commence in child's home state); *Curtis v. Curtis*, 574 So. 2d 24, 31 (Miss. 1990) (trial court correctly assumed temporary emergency jurisdiction, but erred when it continued to exercise subject matter jurisdiction over custody dispute after it should reasonably have become apparent that there was no danger to children from permitting adjudication of modification in home state); *Holt v. District Court*, 626 P.2d 1336, 1346 (Okla. 1981) (trial court may make such order as needed to protect children under emergency jurisdiction, but must require mother to submit matter to home state within definite period of time).

■ Before examining the family court's third reason, we review the standards under which the court must decide whether to decline jurisdiction over custody disputes. Those standards are contained in 15 V.S.A. § 1036(a) of the UCCJA, which provides that the family court "may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Although the decision whether to decline jurisdiction is discretionary and thus subject to review under an abuse-of-discretion standard, see *Brown v. Brown*, 486 A.2d 1116, 1123 (Conn. 1985), the family court must act in accordance with the statute and its overall purposes to eliminate

forum shopping and to assure that the children's best interests are considered. See *id.*

In light of the PKPA's preference for home-state jurisdiction, a court in a state other than the home state is normally not acting in a child's best interest when it exercises jurisdiction to make a permanent custody determination regarding that child. See *Columb*, 161 Vt. at 109-10, 633 A.2d at 693 ("[I]t is not normally in the best interest of the child for Vermont to exercise jurisdiction to determine the custody of a child whose home state or recent home state is other than Vermont. . . . Vermont is normally an inconvenient forum to determine the custody of a child who has a home state other than Vermont."). Under certain circumstances, a home state may defer jurisdiction to another state on the ground that the other state is the more appropriate forum, but such a determination requires consideration of the nonexclusive factors enumerated in § 1036(c), as well as any other relevant factors. See *Brown*, 486 A.2d at 1128-29.

The factors listed in § 1036(c) inquire

> (1) if another state is or recently was the child's home state; (2) if another state has a closer connection with the child and his family or with the child and one or more of the contestants; (3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; (4) if the parties have agreed on another forum which is no less appropriate; and (5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes of this chapter.

Related factors commonly considered by courts deciding whether to decline jurisdiction under § 1036 of the UCCJA are (1) the location of the children at the time of the proceeding; (2) the length of time that the children have or had been in or out of the forum state at the time the proceeding commenced; (3) the circumstances that led to the children being removed from or taken to the forum state; (4) whether the children's custody is subject to a custody decree and, if so, which state issued that decree; (5) the nature of the existing custody arrangements; (6) the location of collateral relatives; (7) the strength of the children's ties to the competing jurisdiction as compared to their ties to the forum state; and (8) the respective financial abilities of the competing parties to litigate the custody dispute in out-of-state proceedings. Cf. *Matthews v. Riley*, 162 Vt. 401, 413, 649 A.2d 231, 240

(1994) (requiring showing not only that moving party would be inconvenienced by assumption of jurisdiction, but also that declining jurisdiction would not seriously inconvenience nonmoving party). See Annotation, *Inconvenience of Forum as Ground for Declining Jurisdiction Under § 7 of the Uniform Child Custody Jurisdiction Act (UCCJA)*, 21 A.L.R.5th 396, 443 (1994).

The family court's third reason for declining jurisdiction — the presence of the children's therapist and counselors in Arizona — is a consideration that falls within one of the statutory criteria, see § 1036(c)(3) (whether substantial evidence concerning child's present or future care, protection, training and personal relationships is more readily available in another state); however, the court ignored the other statutory criteria. It did not consider, for example, whether declining jurisdiction would be inconsistent with one of the principal goals of the UCCJA and PKPA — to discourage parents from failing to return children after visitation, see *Schoeberlein v. Rohlfing*, 383 N.W.2d 386, 388 (Minn. Ct. App. 1986) — and with case law precluding courts from bootstrapping emergency jurisdiction into jurisdiction to make permanent custody determinations. See *Pima County*, 711 P.2d at 1205 (if trial court could permit evaluations performed in Arizona under emergency jurisdiction to suffice as "substantial evidence" for purposes of permanent jurisdiction, it would effectively defeat purposes of UCCJA).

■ Because two of the three reasons relied upon by the family court in declining jurisdiction were erroneous, and the third reason was a single factor relevant to only one of the several criteria that the court should have considered, we cannot find that the court properly exercised its discretion. We acknowledge, however, that relevant factors not expressly relied upon by the family court suggest that resolution of the custody dispute by the Arizona court may have been appropriate. For example, although Vermont was plainly the children's home state at the time of the commencement of emergency proceeding in Arizona, the children had been in Vermont for only about nine months before they left for Arizona in June 1998. Further, the original divorce decree and accompanying custody order was issued in North Carolina, not Vermont, and father challenged mother's move to Vermont until mother agreed to allow the children to spend their summers with him. Moreover, this is not a situation where father surreptitiously moved the children to another state to improve his chances of obtaining custody. See *Brown*, 486 A.2d at 1127. Indeed, mother acknowledged the concerns that led father to file an

emergency petition in Arizona for modification of visitation or custody, and mother may have even acquiesced to the children remaining in Arizona while she resolved her problems with her husband.

Finally, we cannot ignore that the children have apparently been in Arizona for over eighteen months, and that it has been nearly one year since the family court declined to exercise jurisdiction over the matter. Although whatever occurs after initiation of a custody proceeding "is irrelevant to the *initial* inquiry into jurisdiction," *Peloso*, 144 Vt. at 464, 479 A.2d at 158 (emphasis added), a court must consider current circumstances in determining whether to decline jurisdiction on the ground that the forum is inconvenient. See *Columb*, 161 Vt. at 113, 633 A.2d at 694 (requiring family court on remand to determine whether adjudication of custody dispute in Vermont was in best interest of child at time of remand and whether then-current situation of parties and child warranted family court's exercise of jurisdiction as most convenient forum).

■ Given all of the circumstances cited above, we are not prepared to grant mother's request that we compel the family court to assume jurisdiction over the parties' custody dispute. Rather, we vacate the family court's February 19, 1999 order declining to exercise jurisdiction over the matter, and order the court to reconsider the jurisdictional question after holding a conference with the Arizona superior court and the parties. Cf. *J.D.S.*, 893 P.2d at 745-46 (noting that Arizona trial court held telephonic conference with Florida trial court and all parties before determining that Florida was more appropriate forum to resolve custody dispute). In reaching its decision, the family court shall consider the factors contained in § 1036(c) and those detailed in this opinion.

*The family court's February 19, 1999 order is vacated, and the matter is remanded for further proceedings consistent with this opinion.*